HOWARD & WIFE.
*vs*
CURRENT.. &c.

---

## Howard and wife *vs* Current &c.

### APPEAL FROM THE BOURBON CIRCUIT.

#### *Equities.*

CHANCERY.

*Case* 114.

JUDGE SIMPSON delivered the opinion of the Court.

*September* 17.

JOHN BLACKBOURN died intestate, leaving a considerable estate in land and slaves. For many years previously he had been a lunatic, and his estate, during the time he was in that condition, was placed in the hands of a committee, and so remained for a number of years. In 1834 the complainant, James Howard, the defendants, Eli Current and O. B. Gridley, each of whom had married a daughter of the said Blackbourn, (he having but three children,) having come to the conclusion that he would never be restored to his proper mind, agreed to, and did divide, his slaves amongst them, each taking one third part. As evidence of the arrangement, they executed an instrument of writing, reciting the division specifying the slaves that were to belong to each of them, and binding themselves to abide by the division after the death of Blackbourn, if nothing occurred during his life rendering it necessary for Current, who was the committee, to restore or account for the slaves.

The case stated.

Blackbourn remained a lunatic until he died. After the division of the slaves already mentioned, Gridley sold and delivered his share to Current, who thereby

became possessed of two thirds, Howard having possession of the other third.    Before Blackbourn's death, Gridley's wife and Current's wife both died.    Gridley's w ife left one child, but it also died, before Blackbourn, Current's wife left several children at her death.

After Blackbourn's death this suit in chancery was brought by Howard and wife, claiming one half of all the slaves.    Current set up and relied upon the division and agreement before mentioned, and his purchase from Gridley, to defeat the claim.    The Court below refused the relief sought by the complainants, and dismissed so much of their bill as prayed for a re-division of the slaves, and they have appealed.

To give to the complainants one half of the slaves, would result in great injustice to Current.    He evidently bought Gridley's interest upon faith of the division and agreement made by the parties.    By the agreement, the division was to be final and permanent, unless the committee during the lifetime of Blackbourn, should be required to account for the slaves; that contingency never occurred, and consequently, according to the terms of the agreement, if they are to have effect, the division already made cannot be disturbed.

It is true this agreement relates to property in which the parties had no interest, at the time it was executed. If, on that account it could not be specifically executed, it would not follow, that so far as it had been executed, it should be disregarded, or that either party could rescind it at pleasure.    The complainants ask a division of the slaves, without reference to the agreement.  The defendant does not ask a specific execution of it, but relies upon it merely as a defense against the claim asserted by the complainants.    It forms, in our opinion a good equitable defense, as it was entered into fairly, and as the parties, at the time of its execution, had every reason to suppose that the property would ultimatly belong to them.

*A party may set up as an equity for his defence, an agreement which the Chancellor would not specifically execute at his instance.*

But it is contended that Mrs. Howard is the owner of the property, and ought not to be prejudiced by the acts of her husband.    The slaves, however, belong to Howard, in right of his wife, and upon the death of

her father, vested in him in her right, the administrator having assented to the division, or, in other words, having surrendered them to the distributees, to be held by them according to their rights. If, therefore, one half of the slaves should be decreed to the complainants, the title to them would vest in the husband, and they would become absolutely his property. The interest of the wife, at most, does not extend beyond her right in equity to a settlement out of them for her support; and she has not asked for this, nor presented such a state of case, as would have authorized a decree in her favor, even to this extent.

It is true, that an arrangement of this kind among the children, before the death of the parent, who is a lunatic, by which they divide out his estate, is against the policy of the law, inasmuch as its tendency might be to cause injustice to be done him, both as it regards his return to his right reason, and his comfortable support whilst deprived of it, and should not, therefore, be encouraged; yet, as the complainant, Howard, participated in the wrong as well as the defendant, the rule of law applies, by which the latter, from the attitude he occupies as defendant; is placed in a more favorable condition than the complainant. And it is to be observed that, in this case, there was still remaining, after the division of the slaves, a sufficiency of other estate belonging to the lunatic, to secure to him a competent support.

There is also a strong equitable consideration presented against the relief sought by Howard and wife, in the fact that Current purchased the slaves allotted to Gridley, and paid him for them a full consideration, upon the faith of the agreement of the parties to abide by the division. This purchase was made, too, evidently with the knowledge and assent of Howard. It would, therefore, be manifestly unjust in him, under these circumstances, to disregard and violate his agreement, and a Court of equity will render him no assistance in the accomplishment of such a design.

Wherefore, the decree of the Court below is affirmed.

*Smith* for appellants; *G. Davis* for appellees.

HOWARD & WIFE
*vs*
CURRENT, &c.

Three sons-in-law, one of whom was the committee for the father-in-law, who was a lunatic, divided the slaves of the latter amongst themselves before his death, agreeing that the division was to be final unless the committee was called upon during the life of the lunatic, to surrender the property, in which event the division was to be null and void, he was not called upon to surrender during the life of the lunatic. After his death the committee brought his bill for a redivision.——Held that the former division was a bar to the relief sought.